NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                              :
SANTIAGO ORTIZ-DOMINGUEZ,      :
                              :   Civil Action No.
            Petitioner,        :   13-0025 (RBK)
                              :
       v.                      :
                              :
JORDAN R. HOLLINGSWORTH,        :   **OPINION**
                              :
            Respondent.        :
_____:

**Kugler**, District Judge:

    This matter comes before the Court upon an application ("Petition") filed by Santiago Ortiz-Dominguez ("Petitioner"), who is seeking § 2241 habeas corpus relief. See Docket Entry No. 1. The Petition arrived unaccompanied by Petitioner's filing fee or by his in forma pauperis application. See id.

    For the reasons detailed below, the Petition will be dismissed for lack of Section 2241 jurisdiction. No transfer order will issue. Petitioner will be directed to submit his filing fee or his duly executed in forma pauperis application.

I.   **Background**

    It is an unfortunate reality of prisoners' litigation that this area of law is particularly amenably to "fad suits," since the news of a judicial decision perceived by inmates as favorable

to incarcerated individuals tends to spread throughout prison facilities like wild fire, causing prisoners to commence scores of merely hope-driven, poorly thought-through actions: until that fad gets extinguished by a binding circuit-level or Supreme Court decision, and the next fad grabs the prisoners' attention. Cf. Associated Bank, N.A. v. Dennis Tech., LLC, 2008 U.S. Dist. LEXIS 42844, at *7, n.2 (S.D. Ill. May 30, 2008) ("The Appellate Court will eventually have to answer this question, and preferably sooner, rather than later, as this type of [application] appears to be the latest fad in litigation") (citation omitted).  Even more unfortunate is the fact that "jail-house" lawyers, upon getting the news, swiftly capitalize on these fleeting fads by preparing boiler-plate-language forms and "selling" them, usually in exchange for cigarettes, favors or contraband items, to lacking-legal-savvy general population inmates, who utilize these meaningless forms and commence legal actions by merely filling up a few blank spaces.  Cf. Hagan v. Rogers, 570 F.3d 146, 163 (3d Cir. 2009) (courts should be "particularly [careful] when the rules [the courts] impose are susceptible to abuse by savvy jail-house lawyers"); see also Hany El Sayed v. Holder, 2012 U.S. Dist. LEXIS 16808, at *1-2 (D.N.J. Feb. 9, 2012) ("The Petition is a rather lengthy submission. However, and unfortunately enough, the Petition offers this Court mainly Petitioner's perceptions of what the legal regime is (or should be), while the

factual information pertaining to Petitioner's own circumstances is very scarce") (citations to docket entries omitted).

The case at bar is, alas, an unfortunate example of such "fad litigation."

On November 6, 2012, the United States Court of Appeals for the Eleventh Circuit ("Eleventh Circuit") issued its decision in <u>United States v. Bellaizac-Hurtado</u>, 700 F.3d 1245 (11th Cir. 2012). In a nutshell, the Eleventh Circuit concluded that drug trafficking was not an "offense against the Law of Nations" and, thus, Congress exceeded its powers when it enacted the Maritime Drug Law Enforcement Act ("MDLEA") in such a fashion that it allowed criminalizing of drug trafficking conducted in the territorial waters of another country. See id. So holding, the Eleventh Circuit overturned United States convictions of four people who were trafficking cocaine within Panamanian waters.[1]

---

[1] In <u>Bellaizac-Hurtado</u>, the U.S. Coast Guard, conducting a routine locally-authorized patrol of Panamanian waters and observing a vessel operating without lights or flag, informed the local authorities of that vessel. The local navy pursued the vessel until its occupants abandoned it and fled into a jungle; they were caught by the local law enforcement. The local navy searched the vessel and discovered approximately 760 kilograms of cocaine. Panama consented to extradition to and prosecution of the detained suspects in the United States. A federal grand jury indicted them, prompting them to assert lack of the prosecuting court's jurisdiction and unconstitutionality of the MDLEA, as applied. Having their motion to that effect denied, they conditionally pled guilty, while simultaneously raising their aforesaid jurisdictional argument on appeal. The government responded by arguing that drug trafficking was an offence against the Law of Nations, but the Eleventh Circuit, after examining that argument under international customary law, disagreed.

Soon after the entry of Bellaizac-Hurtado, numerous Section 2241 habeas actions began being filed in federal district courts, this District included.  The bulk of litigants commencing these matters utilized lengthy but meaningless, pre-printed pleading forms that asserting reliance on that decision but allowed the litigants only a handful of blank spaces to fill with their own facts, effectively preventing the litigants' actual consideration of the claims they were raising.  The case at bar, alas, offered this Court such a pleading.  See Docket Entry No. 1, at 9-16.

Here, Petitioner's pre-printed application consists of eight pages, see id., but -- substantively -- informs the Court merely of: (a) Petitioner's name, see id. at 10; (b) his date of conviction, i.e., July 8, 2010, see id.; (c) the date when he was "seized" by the U.S. Coast Guard, i.e., January 18, 2009, see id. at 10; (d) his imposed 120-month term of federal imprisonment, see id.; and (e) the claim that he was "seized" in the waters 34 miles away of the coastline of Guatemala.[2]  See id.

---

[2] Petitioner's legal argument is, seemingly, based solely on his assertion that he was "seized by the U.S. Coast Guard" in the waters 34 miles away from Guatemala.  See Docket Entry No. 1, at 10.  However, the issue where Petitioner was "seized by the U.S. Coast Guard" is wholly irrelevant to the holding of the case he relies upon since -- in Bellaizac-Hurtado -- the defendants and their vessel were never "seized" by the U.S. Coast Guard: their vessel was seized and searched by the Panamanian Navy, while they were apprehended by the Panamanian National Frontier Service and duly extradited to the United States upon a decree of the Foreign Ministry of Panama.  In other words, the involvement of the U.S. Coast Guard in the Bellaizac-Hurtado facts was limited to spotting the defendants' vessel and alerting local authorities to

The application at bar closes with a pre-printed prayer for relief, reading:

> Petitioner prays upon this august Court to take immediate action into the constitutional issues presented herein and without delay grant Petitioner's writ and order his judgment vacated in its entirety.

Id. at 16.

The remainder of Petitioner's application consists solely of a pre-printed text and offers the Court a verbose discussion of law, apparently as perceived by the original preparer of this form.[3]  See, generally, Docket Entry No. 1.

---

the odd conduct and appearance of that vessel.  Yet, recognizing that Petitioner's submission at bar is merely a pre-printed form where his own participation in production of that document was limited merely to filling up a handful of blank spaces, this Court correlates the holding of Bellaizac-Hurtado (that the MDLEA is unconstitutional if applied to the act of drug trafficking conducted in foreign territorial waters) to Petitioner's claims and presumes Petitioner's intent to assert that he was conducting drug trafficking in the waters 34 miles away from Guatemala.

[3]  While the Court is mindful of Petitioner's emotions, the Court takes this opportunity to remind Petitioner that he is the sole master of his claims, and he alone stands to bear the consequences of his litigations. "The courts in this nation stand ready to address challenges brought by litigants in good faith. Which, in turn, means that the judiciary - including the Judges in this District - expect litigants to treat their litigation with utmost seriousness, without abusing legal process and without unduly testing . . . common sense of the judiciary." In re Telfair, 745 F. Supp. 2d 536 (D.N.J. Oct. 15, 2010).  The Court, thus, urges Petitioner to prepare his pleadings himself. All pleadings executed by pro se litigants are construed with a measure of tolerance, see Erickson v. Pardus, 551 U.S. 89 (2007), Haines v. Kerner, 404 U.S. 519, 520 (1972), and inartful "dry facts stated in a clear and concise pleading speak volumes for the purposes of any legal proceeding, while eloquent 'nothings' are invariably dismissed as pure rhetoric." Clauso v. Glover, 2012 U.S. Dist. LEXIS 139205, at *21 (D.N.J. Sept. 26, 2012).

In light of the paucity of Petitioner's factual statements, this Court conducted its own research and determined as follows:

On January 26, 2010, a criminal indictment was filed by the United States government against Joel Avendano De La Cruz and Petitioner, identified as Santiago Ortiz Dominguez.[4] See United States v. Cruz et al., Crim. Action No. 10-0042 (JSM) (M.D. Fla.), Docket Entry No. 1.  Petitioner initially entered the plea of not guilty but, on March 17, 2010, changed his plea to a guilty one; that guilty plea was accepted by Petitioner's trial judge on April 1, 2010.  See id., Docket Entries Nos. 25, 26 and 35.  On July 16, 2010, Petitioner entered his declaration of intent to not appeal.  See id., Docket Entry No. 44.  On July 22, 2010, he was sentenced to his current 120-month term.  See id. at 50.  His motion for reconsideration of this term was denied on August 3, 2010.  See id., Docket Entry No. 52.

## II. Discussion

### A. Jurisdictional Bar

Since Petitioner was convicted and sentenced more than a

---

[4] The indictment asserted that Petitioner and his co-defendant, as well as their unidentified co-conspirators possessed, with intent to distribute, at least five kilograms of controlled substances while "aboard a vessel."  The indictment was wholly silent as to the location of that vessel.  Therefore, solely for the purposes of the case at bar and without making a factual finding to that effect, this Court presumes that Petitioner's conviction ensued from the charge that he was conducting his act of drug trafficking on a vessel, which was located 34 miles away from the coastline of Guatemala.

year and a half ago, his direct appeal (had it not been barred by his waiver) would necessarily be untimely if it were filed now, and the same would apply to his Section 2255 motion, had he filed such motion with his trial court instead of filing the Petition at bar with this District.[5]  However, such untimeliness does not vest this Court with jurisdiction to entertain Petitioner's challenges under Section 2241.

### 1. *Standard For Summary Dismissal*

A court presented with a petition for writ of habeas corpus "shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto."  28 U.S.C. § 2243.  Thus, "[f]ederal courts are authorized to dismiss summarily any habeas petition that appears legally insufficient on its face." McFarland, 512 U.S. at 856; see also United States v. Thomas, 221 F.3d 430, 437 (3d Cir. 2000); Siers v. Ryan, 773 F.2d 37, 45 (3d Cir.), cert. denied, 490 U.S. 1025 (1985).  Here, this Court is presented with a scenario warranting summary dismissal.

### 2. *Limited Scope of Section 2241 Review*

Section 2241 of Title 28 of the United States Code provides in relevant part:

---

[5] Section 2255 imposes a one-year limitation period, which runs from the date on which the judgment of conviction becomes final.  See 28 U.S.C. § 2255(f).

> The writ of habeas corpus shall not extend to a prisoner unless- . . . He is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2241(c)(3).

As a result of the practical difficulties encountered in hearing a challenge to a federal sentence in the district of confinement rather than the district of sentence, in its 1948 revision of the Judicial Code, Congress established a procedure whereby a federal prisoner might collaterally attack his sentence in the sentencing court.[6] See 28 U.S.C. § 2255; Davis v. United States, 417 U.S. 333, 343-44 (1974); United States v. Hayman, 342 U.S. 205, 219 (1952).

Section 2255 provides in relevant part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255.

---

[6] The addition of 28 U.S.C. § 2255 was deemed necessary because a § 2241 petition must be filed in the district where the prisoner is confined and "the few District courts in whose territorial jurisdiction major federal penal institutions are located were required to handle an inordinate number of habeas corpus actions far from the scene of the facts . . . solely because of the fortuitous concentration of federal prisoners within the district." United States v. Hayman, 342 U.S. 205, 213-14 (1952).

"Motions pursuant to 28 U.S.C. § 2255 are the presumptive means by which federal prisoners can challenge their convictions or sentences that are allegedly in violation of the Constitution." Okereke v. United States, 307 F.3d 117, 120 (3d Cir. 2002). This is because § 2255 expressly prohibits a district court from entertaining a challenge to a prisoner's federal sentence under § 2241 unless the remedy under § 2255 is "inadequate or ineffective" to test the legality of the petitioner's detention. See 28 U.S.C. § 2255. Specifically, paragraph five of § 2255 provides:

> An application for a writ of habeas corpus [pursuant to 28 U.S.C. § 2241] in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.

28 U.S.C. § 2255; see Cradle v. Miner, 290 F.3d 536 (3d Cir. 2002); In re Dorsainvil, 119 F.3d 245, 251 (3d Cir. 1997).

A § 2255 motion is inadequate or ineffective, authorizing resort to § 2241, "only where the petitioner demonstrates that some limitation of scope or procedure would prevent a § 2255 proceeding from affording him a full hearing and adjudication of his wrongful detention claim." Cradle, 290 F.3d at 538. "It is the inefficacy of the remedy, not the personal inability to use it, that is determinative." Id. Indeed, "Section 2255 is not

'inadequate or ineffective' merely because the sentencing court does not grant relief, the one-year statute of limitations has expired, or the petitioner is unable to meet the stringent gatekeeping requirements of the amended § 2255.  The provision exists to ensure that petitioners have a fair opportunity to seek collateral relief, not to enable them to evade procedural requirements."  Id. at 539.

### 3. The Narrow Exception In Inapplicable to Petitioner

In Dorsainvil, the Court of Appeals held that the remedy provided by § 2255 is "inadequate or ineffective" (hence, permitting resort to § 2241, a statute without timeliness or successive petition limitations), only where it would have been a complete miscarriage of justice to confine a prisoner for conduct that, based upon an intervening interpretation of the statute of conviction by the United States Supreme Court, may not have been criminal conduct at all.[7]  See Dorsainvil, 119 F.3d at 251-52.

---

    [7]  The holding of Dorsainvil made a direct correlation between resort to Section 2241 and exception to the gatekeeping requirement of § 2255 review ensuing from a new rule of constitutional law, made retroactively applicable by the Supreme Court and rendering the defendant innocent.  See Dorsainvil, 119 F.3d at 247.  The presence of Supreme Court finding of non-criminality of the conduct at issue is, seemingly, a prerequisite requirement to availability of the Dorsainvil exception.

> [W]e agree with the Court of Appeals for the Third
> Circuit that, "[w]ere no other avenue of judicial
> review available for a party who claims that s/he is
> factually or legally innocent . . . we would be faced
> with a thorny constitutional issue." In re Dorsainvil,
> 119 F.3d [at] 248 . . . .  As we observed in Triestman

The Dorsainvil exception, however, is facially inapplicable to the case at bar: there is no Supreme Court precedent that would hold Petitioner's drug-related offenses underlying his federal conviction are not criminal conduct. Moreover, here, Petitioner merely asserts that his trial court, the United States District Court for the Middle District of Florida, was *without subject matter jurisdiction* to prosecute him, but at no point does Petitioner claim that *his drug-trafficking conduct was* deemed (by any court, including the Bellaizac-Hurtado court) *not a crime.*[8]

---

v. United States, a case addressing a federal prisoner's collateral appeal, "serious Eighth Amendment and due process questions would arise with respect to . . . the AEDPA" if it were read to deny collateral review to a prisoner who is actually innocent. 124 F.3d 361, 378-79 (2d Cir. 1997); see also In re Davis, 557 U.S. 952 (2009) (per curiam) (Stevens, J., concurring) (citing Triestman's discussion of "serious constitutional concerns that would arise if AEDPA were interpreted to bar judicial review of certain actual innocence claims") . . . .

Rivas v. Fischer, 687 F.3d 514, 552 (2d Cir. 2012) (ruling on a Section 2255 application). Indeed, absent Supreme Court finding of non-criminality of a particular conduct (or, at the very least absent a binding Third Circuit precedent), a determination rendered by any other court (or a determination not applicable on collateral review) would render this Court's resort to the Dorsainvil exception a violation of both the spirit and letter of § 2255 gatekeeping requirement: the jurisdictional determination of Section 2241 would be "up for grabs," being dependent on the latest decision rendered by one of inferior federal courts.

[8] Even if this Court were to: (a) ignore that Article 19(1)(d) of the 1958 Convention on the Territorial Sea and Contiguous Zone and Article 27(1)(d) of the 1982 United Nations Convention on the Law of the Sea ("UNCLOS") authorize states,

Since Petitioner's subject-matter jurisdictional challenges to the powers of his trial court were readily available to him ab initio (during his prosecution), and he could have raised the same by means of a timely Section 2255 motion (even if this Court were to presume that his direct appeal to the Eleventh Circuit was barred by an enforceable waiver), § 2255 is not an "inadequate or ineffective" remedy to address his jurisdictional challenges to his conviction.[9] Correspondingly, this Court is without § 2241 jurisdiction to entertain his claims.

B.   **Transfer Is Not In the Interest of Justice**

---

including United States, Panama, Guatemala, etc., to arrest persons in their territorial seas if it is necessary to suppress narcotics trafficking; and (b) focus solely on the MDLEA and its interpretation by Bellaizac-Hurtado, the Petition would be substantively meritless. Territorial waters are the coastal waters extending seaward at most for four leagues (twelve nautical miles, i.e., 19.3 kilometers) from the baseline of a nation, and Mare Liberum (the High Seas) is the entire body of navigable waters of the sea/ocean stretching seaward of the nation's territorial waters. See UNCLOS, Dec. 10, 1982, 1833 U.N.T.S. 3, art. 3 (entered into force Nov. 16, 1994). Here, Petitioner asserts that he was arrested 34 miles from the Guatemalan baseline, i.e., on the High Seas. Hence, even had Bellaizac-Hurtado been a Supreme Court decision (or, at the very least, a published Third Circuit precedent) which (a) actually decriminalized drug trafficking solely on the particular locale of the offense; and (b) retroactively applied on collateral review, Petitioner would still be not entitled to habeas relief under the so-hypothesized version of Bellaizac-Hurtado decision.

[9] Jurisdictional defenses are available on Section 2255 review even if the defendant entered a guilty plea. See, e.g., United States v. Kunzman, 125 F.3d 1363 (10th Cir. 1997) (providing a thoughtful analysis of the distinction ensuing from jurisdictional and not jurisdictional defenses and the effect of procedural bar applicable to claims raised on collateral review).

Whenever a civil action is filed in a court that lacks jurisdiction, "the court shall, if it is in the interest of justice, transfer such action . . . to any other such court in which the action . . . could have been brought at the time it was filed." 28 U.S.C. § 1631. This Court, therefore, may construe the Petition at bar as Petitioner's untimely Section 2255 application and direct transfer of the so-construed Petition to the United States District Court for the Middle District of Florida. However, since Petitioner's challenges appear invalid even under the holding of Bellaizac-Hurtado, the Court finds it is not in the interests of justice to transfer this action. That being said, the Court's election not to transfer Petitioner's application does not bar him from seeking leave from the Middle District of Florida on his own if he wishes to apply for permission to file a Section 2255 motion out of time.[10]

### C. Petitioner Is Obligated to Submit His Filing Fee

For the purposes of the statute of limitations inquiry, "a pro se prisoner's habeas petition is deemed filed at the moment [(s)]he delivers it to prison officials for mailing to the

---

[10] No statement made in this Opinion or in the Order filed herewith shall be construed as expressing this Court's position that Petitioner's application seeking leave to file a Section 2255 motion out of time would be meritorious (or meritless). Analogously, no statement made in this Opinion or in the Order filed herewith shall be construed as expressing this Court's position as to substantive correctness (or incorrectness) of the Eleventh Circuit's decision in Bellaizac-Hurtado.

district court," Burns v. Morton, 134 F.3d 109, 113 (3d Cir. 1998) (citing Houston v. Lack, 487 U.S. 266 (1988)), being subject to the same mailbox rule that applies to civil complaints.  See Houston, 487 U.S. 266; McDowell v. Delaware State Police, 88 F.3d 188, 191 (3d Cir. 1996).  However, the issue of the limitations period aside,

> [a]n application is "filed," as that term is commonly understood, when it is delivered to, and accepted by the appropriate court officer for placement into the official record.  [Moreover, an] application is "properly filed" when its delivery and acceptance are in compliance with the applicable laws and rules governing filings.  These usually prescribe . . . the form of the document, . . . the court and office in which it must be lodged, and the requisite filing fee.

Artuz v. Bennett, 531 U.S. 4, 8-9 (2000) (citations and footnote omitted).

Section 1914 provides that "[t]he [C]lerk of each district court shall require the parties instituting any civil action, suit or proceeding in such court . . . to pay a filing fee of $ 350 except that on application for a writ of habeas corpus the filing fee shall be $ 5."  42 U.S.C. § 1914(a).  The Supreme Court, however, observed that, "while [$ 5] is . . . an 'extremely nominal' sum, if one does not have it and is unable to get it[,] the fee might as well be [$ 500]."  Smith v. Bennett, 365 U.S. 708, 712 (1961).  Therefore, a related statute, Section 1915, governs applications filed in forma pauperis ("IFP") and provides, in relevant part, that leave to proceed IFP may be

granted in any suit to a litigant "who submits an affidavit [which demonstrates] that the [litigant] is unable to pay such fees or give security therefor."[11]  28 U.S.C. § 1915(a)(1).

The prisoner's legal obligation to prepay the filing fee or to duly obtain IFP status is automatically incurred by the very act of initiation of his legal action.  See Hairston v. Gronolsky, 2009 U.S. App. LEXIS 22770, at *5 (3d Cir. Oct. 15, 2009) (citing Hall v. Stone, 170 F.3d 706, 707 (7th Cir. 1999)). Since a prisoner's repeated failure to prepay the filing fee or to submit a proper IFP application qualifies as failure to prosecute the prisoner's legal action and, therefore, warrants dismissal, see Hairston, 2009 U.S. App. LEXIS 22770 (affirming dismissal upon the prisoner's persistent refusal to submit a complete IFP application); see also Hernandez v. Martinez, 327 F. App'x 340 (3d Cir. 2009); Bridgeman v. Bureau of Prisons, 112 F. App'x 411 (6th Cir. 2004), district courts may direct administrative termination of the actions commenced without proper prepayment of filing fee or complete IFP application.

Here, however, taking notice of the tide of applications

---

[11] In a habeas matter, the prisoner seeking to proceed IFP must submit to the Clerk: (a) a completed affidavit of poverty; and (b) a certification signed by an authorized officer of the institution certifying both the amount presently on deposit in the petitioner's prison account as well as the greatest amount on deposit in the petitioner's prison account during the six month period prior to the date of the certification.  See Local Civil Rule 81.2(b).

substantively indistinguishable from that at bar, this Court finds it warranted to enter its ruling without directing administrative termination on the basis of Petitioner's failure to prepay his filing fee or to obtain in forma pauperis status, thus ripening this case for appeal, if Petitioner so desires. Cf. Associated Bank, N.A., 2008 U.S. Dist. LEXIS 42844, at *7, n.2.  Petitioner, therefore, will be allowed to cure the said deficiency of his application post-ruling.

### III. Conclusion

For the foregoing reasons, the Petition, Docket Entry No. 1, will be dismissed for lack of jurisdiction.  No transfer to the United States District Court for the Middle District of Florida will be directed.  Petitioner will be ordered to pay his filing fee of $ 5.00 or to submit his complete in forma pauperis application.  The Clerk will be directed to serve Petitioner with the applicable form to facilitate his endeavors to that effect.

An appropriate Order accompanies this Opinion.

S/Robert B. Kugler
**ROBERT B. KUGLER**
**United States District Judge**

Dated: January 11, 2013